# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CITY OF GREEN BAY, and KRIS TESKE, in her official capacity as City of Green Bay City Clerk,

        Plaintiffs,

    v.

MARGE BOSTELMANN, JULIE M. GLANCEY, ANN S. JACOBS, DEAN KNUDSON, ROBERT F. SPINDELL, JR., and MARK L. THOMSEN, in their official capacities as Wisconsin Elections Commissioners, ANDREA PALM, in her official capacity as Secretary-Designee of the Wisconsin Department of Health Services, and TONY EVERS, in his official capacity as Governor of the State of Wisconsin,

        Defendants.

Civil Action No. _____

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs City of Green Bay and Kris Teske, in her official capacity as City of Green Bay City Clerk, file this Verified Complaint for Declaratory and Injunctive Relief against Defendants Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen, in their official capacities as Wisconsin Elections Commissioners, Andrea Palm, in her official capacity as Secretary-Designee of the Wisconsin Department of Health Services, and Tony Evers, in his official capacity as Governor of the State of Wisconsin, and allege as follows:

## Nature of the Case

COVID-19 has spread to 190 countries and territories, including the United States, and there have been more than 333,000 confirmed cases—and over 14,500 related deaths—worldwide.

The pandemic has caused a state of crisis across the United States, including here in Wisconsin, where at least 416 people have been infected and at least five have died as a result of COVID-19. The number of cases here and abroad continues to grow at an alarming rate every day, prompting local, state, federal, and international health officials and organizations to issue directives and recommendations that all individuals practice social distancing and refrain from meeting in large groups, with the aim of slowing the spread of the disease throughout communities.

At the same time that local governments in Wisconsin are attempting to deal with the crisis caused by COVID-19, municipal clerks have been working diligently to prepare, organize, and administer the upcoming spring election scheduled for April 7, 2020. However, local governments are finding it functionally impossible to comply with both the Wisconsin Election Commission's established procedures for administering the election and the directives of health officials to maintain social distancing.

### Jurisdiction and Venue

1.      Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of a right secured by the Fourteenth Amendment to the United States Constitution.

2.      Plaintiffs bring this action for declaratory judgment under 28 U.S.C. §§ 2201 and 2202, to have the Court declare that to administer the April 7, 2020 election in accordance with Defendants' directives and with Wisconsin Statutes would deprive the voters of rights secured by the United States Constitution, exposing Plaintiffs to liability under 42 U.S.C. § 1983.

3.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the matters in controversy arise under the Constitution and laws of the United States.

4.     This Court has personal jurisdiction over the Defendants, the Commissioners of the Wisconsin Elections Commission, Secretary-Designee of the Wisconsin Department of Health Services, and the Governor of the State of Wisconsin, who are sued in their official capacity only.

5.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiffs and Defendants are residents of Wisconsin, and Plaintiffs reside in this District.

## Parties

6.     Plaintiff City of Green Bay ("City") is a Wisconsin municipal corporation, organized and existing under the laws of the State of Wisconsin, whose principal offices are located at 100 N. Jefferson St., Green Bay, Brown County, Wisconsin, 54301.

7.     Plaintiff Kris Teske is the City Clerk for the City of Green Bay, whose principal office is located at 100 N. Jefferson St., Green Bay, Brown County, Wisconsin, 54301, and brings this action in her official capacity.

8.     Defendants Marge Bostelmann, Julie M. Glancey, Ann S. Jacobs, Dean Knudson, Robert F. Spindell, Jr., and Mark L. Thomsen are the six Commissioners of the Wisconsin Elections Commission ("Commission") and are named as Defendants in their official capacities. Together, they comprise the Wisconsin Elections Commission, the entity responsible for administering Wisconsin's election laws, whose principal offices are located at 212 East Washington Avenue, Third Floor, Madison, Dane County, Wisconsin, 53707. Defendants have acted under color of state law at all times relevant to this action.

9.     Defendant Andrea Palm is named in her official capacity as Secretary-Designee of the Wisconsin Department of Health Services, whose principal office is located at 1 West Wilson Street, Madison, Dane County, Wisconsin, 53703. Defendant has acted under color of state law at all times relevant to this action.

3

10.     Defendant Tony Evers is named in his official capacity as Governor of the State of Wisconsin, whose principal office is located at 115 East, State Capitol, Madison, Dane County, Wisconsin, 53702. Defendant has acted under color of state law at all times relevant to this action.

## Statement of Facts and Law

11.     Unfortunately, the timing of the April 7, 2020 election could not be worse; the COVID-19 pandemic is ramping up in the United States with no expectation that the number of cases will begin to diminish before the election. While efforts are in place across the country, state, county, and city to "flatten the curve," it is abundantly clear that the outbreak in Wisconsin is just beginning. *See, e.g.*, Kara Garvin, *Flattening the Curve for COVID-19: What Does It Mean and How Can You Help?*, UNIVERSITY OF MICHIGAN HEALTH BLOG (March 11, 2020, 1:47 PM), https://healthblog.uofmhealth.org/wellness-prevention/flattening-curve-for-covid-19-what-does-it-mean-and-how-can-you-help; Wis. Dep't of Health Servs., *Outbreaks in Wisconsin*, https://www.dhs.wisconsin.gov/outbreaks/index.htm (last visited March 22, 2020).

12.     Health care professionals caution repeatedly that the outbreak is going to get worse. *See, e.g.*, *id.* (quoting Dr. Howard Markel, M.S., Ph.D.: "An outbreak anywhere can go everywhere."). Health care professionals and epidemiologists forecast that more than 60% of the U.S. population could be infected by the virus. Lawrence O. Gostin, et al., *Presidential Powers and Response to Covid-19*, JAMA (March 18, 2020), https://jamanetwork.com/journals/jama/fullarticle/2763423. National trends from the Centers for Disease Control show that the curve is climbing rapidly. *COVID-19 cases in the United States by date of illness onset, January 12, 2020, to March 18, 2020, at 4pm ET (n=2,267)\*\**, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited March 21, 2020). Domestically, during the four-day period between March 18, 2020 and March 22, 2020,

4

approximately 26,000 additional confirmed cases of COVID-19 were identified across the United States. *Id.*

13. In Wisconsin, the number of confirmed cases more than quadrupled from 106 cases in 14 counties on March 18, 2020, to 416 cases in 30 counties on March 23, 2020. *See* Wis. Dep't of Health Servs., *Outbreaks in Wisconsin*, https://www.dhs.wisconsin.gov/outbreaks/index.htm (last visited March 24, 2020). Health officials estimate that the number of cases is actually higher, however, as a result of a shortage of testing supplies. *See, e.g.*, Adam Duxter, *Lack of test kits leads to low number confirmed COVID-19 cases in Rock County*, CHANNEL 3000 (March 19, 2020 10:24 PM); Interview by WBAY News Anchors with Dr. Ashok Rai (March 20, 2020, 5:37 AM), *viewable at* https://www.wbay.com/content/news/Status-of-testing-sites-supply-shortages-and-how-to-safely-support-local-business-568959781.html.

14. Community spread has been identified in eight Wisconsin counties, causing officials to take extreme measures such as closing schools indefinitely, prohibiting gatherings of 10 or more people, closing bars and restaurants to dine-in service, closing personal provider services such as salons, and directing all persons to stay at home. *Id.*; *see also* Wis Dep't of Health Servs., *Order for Statewide School Closure*, (March 13, 2020); Wis Dep't of Health Servs., *Emergency Order #5 Prohibiting Mass Gatherings of 10 People or More*, (March 17, 2020); Wis Dep't of Health Servs., *Emergency Order #6 Restricting the Size of Child Care Settings*, (March 18, 2020); Wis Dep't of Health Servs., *Emergency Order #8 Updated Mass Gathering Ban* (March 20, 2020); Wis. Dep't Health Servs., *Emergency Order #12 Safer at Home Order* (March 24, 2020).

15.     Furthermore, as of March 19, 2020, Brown County, Wisconsin has identified community spread of COVID-19. *See* Wis. Dep't of Health Servs., *Outbreaks in Wisconsin*, https://www.dhs.wisconsin.gov/outbreaks/index.htm (last visited March 22, 2020).

16.     The CDC recommends putting "distance between yourself and other people if COVID-19 is spreading in your community." CDC, *How to Protect Yourself*, https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html (last visited March 21, 2020).

17.     The response to the pandemic is fluid, with data and directives changing multiple times daily. That is, with the exception of social distancing, which is the only directive that has not changed. *See e.g.* Wis Dep't of Health Servs., *Order for Statewide School Closure*, (March 13, 2020); Wis Dep't of Health Servs., *Emergency Order #5 Prohibiting Mass Gatherings of 10 People or More*, (March 17, 2020); Wis Dep't of Health Servs., *Emergency Order #6 Restricting the Size of Child Care Settings*, (March 18, 2020); Wis Dep't of Health Servs., *Emergency Order #8 Updated Mass Gathering Ban* (March 20, 2020); Press Release, Office of the Governor, Governor Evers Urges Wisconsinites to State Home (March 21, 2020), *available at* https://content.govdelivery.com/accounts/WIGOV/bulletins/2827da9; Wis. Dep't Health Servs., *Emergency Order #12 Safer at Home Order* (March 24, 2020).

18.     In addition, the CDC identifies older adults as having a higher risk of developing more serious complications from COVID-19, and recommends that older adults stay home as much as possible during times of spread. CDC, *Are You at Higher Risk for Severe Illness?*, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (last visited March 21, 2020).

6

19.     Nevertheless, the Wisconsin Department of Health Services cautions that "[y]ounger people, and particularly those who are 18 to 30 years old, aren't immune to COVID-19. Anyone can contract COVID-19. So it's important for everyone, including young and healthy people, to practice social distancing." Wis. Dep't of Health Servs., *Outbreaks in Wisconsin*, https://www.dhs.wisconsin.gov/outbreaks/index.htm (last visited March 22, 2020).

20.     The World Health Organization advises that "around 1 in every 5 people who catch COVID-19 needs hospital treatment." WHO, *Getting Your Workplace Ready for COVID-19* (March 3, 2020), *available at* https://www.who.int/docs/default-source/coronaviruse/getting-workplace-ready-for-covid-19.pdf?sfvrsn=359a81e7_6.

21.     There is no dispute that "[t]he best way to prevent illness is to avoid being exposed to this virus." CDC, *How to Protect Yourself*, https://www.cdc.gov/coronavirus/2019-ncov/prepare/prevention.html (last visited March 21, 2020).

22.     In fact, local health officials, including Prevea Health President and CEO Dr. Ashok Rai, caution against all gatherings. In regard to the California order for the state to shelter-in-place, Dr. Rai stated, "I think the governor's doing a great job there by getting everybody to stay at home. I kind of wish every governor—including ours—would follow suit. We need to take this seriously. The only way to take it seriously right now is to socially isolate, which means in your home. We want everybody to stay at home; so Florida, California, Texas, Wisconsin, it doesn't matter." Interview by WBAY News Anchors with Dr. Ashok Rai (March 20, 2020, 6:32am), *viewable at* https://www.wbay.com/content/news/Status-of-testing-sites-supply-shortages-and-how-to-safely-support-local-business-568959781.html.

23.     Furthermore, even though publicly opposed to changes to the April 7, 2020 election process, Governor Evers and Secretary-designee Palm are recommending that Wisconsinites

"follow the guidance provided by the Centers for Disease Control and Prevention (CDC) and the Wisconsin Department of Health Services (DHS), urging the public to stay home as much as they are able to help protect the health and safety of Wisconsin's healthcare workers." Press Release, Office of the Governor, Governor Evers Urges Wisconsinites to State Home (March 21, 2020), *available at* https://content.govdelivery.com/accounts/WIGOV/bulletins/2827da9.

24.     On March 24, 2020, Governor Evers and Secretary-designee Palm took the next step by issuing an order for all persons in Wisconsin to stay at home or their place of residence. Wis. Dep't Health Servs., *Emergency Order #12 Safer at Home Order* (March 24, 2020).

**I.     Wisconsin Election Law**

25.      Wisconsin law provides that registration by mail and electronic registration closes on the third Wednesday preceding an election. WIS. STAT. § 6.28(1)(a). Thus, according to statute, to use those forms of registration for the April 7, 2020 primary election, voters would have had to register by March 18, 2020.

26.     However, in an Opinion and Order entered on March 20, 2020, Judge William Conley, U.S. District Court Judge for the Western District of Wisconsin, extended electronic voter registration through March 30, 2020. *Democratic National Committee, et al. v. Bostelmann, et al.*, No. 20-249 (W.D. Wis. March 20, 2020).

27.     Individuals registering to vote electronically or by mail must provide a copy of an "identifying document that establishes proof of residence." *Id.* § 6.34(2). The only exception to this rule is for individuals registering electronically who do not have to provide such documentation if they provide "the number of a current and valid operator's license [or] identification card." *Id.* § 6.34(2m).

28.     Historically, Wisconsin voters rely heavily on same-day voter registration. Since 2008, ten to fifteen percent of all registrations have occurred at a polling place on election day. Wis. Elections Comm'n, *General Election Voter Registration and Absentee Statistics 1984-2016*, *available at* https://elections.wi.gov/elections-voting/statistics?q=elections-voting/statistics&page=2 (last visited March 20, 2020).

29.     Wisconsin's absentee voting process allows all registered voters to request an absentee ballot by mail, in person at the municipal clerk's office, by signing a statement and requesting to receive an absentee ballot, via an agent, by delivery to a special voting deputy, or by e-mail or fax. WIS. STAT. § 6.86(1)(a).

30.     All voters are required to present a copy of their proof of identification with their absentee application. *Id.*(1)(ac).

31.     Once a voter has received and completed his or her ballot, he or she must return it so that "it is delivered to the polling place no later than 8 p.m. on election day." WIS. STAT. § 6.87(6). Absentee ballots mailed but not physically received by that time are not counted. *Id.*

32.     Under normal circumstances, the process of mailing absentee ballots to voters and receiving them back in the mail can take up to two weeks. This time period is likely to be even longer under the current circumstances, particularly since the Absentee Requests For April 7 Spring Election had already reached 554,116 for the state as of March 24, 2020.

33.     For in-person voting, the process requires closer and potentially direct contact.

34.     Polls open on election day at 7:00am and close at 8:00pm.

35.     Two (2) identical lists of the registered voters in each ward, known as "poll books," are provided to each ward. A minimum of two (2) poll workers are assigned to each ward table and are responsible for checking voters' photo IDs, locating names and addresses in the poll book,

assigning sequential voter numbers, and issuing ballot to the voters. *See City of Green Bay Election Inspector Training Manual* at 12 (Updated January 2020).

36. There must always be two (2) poll workers at each ward table whenever a voter is being issued a ballot for the purpose of cross checking each other's work and avoiding errors. *Id.* at 23.

37. Poll workers work closely together the entire election day to ensure the integrity of the election by confirming the information recorded on each voter list is accurate and identical. *See id.* at 12.

38. State law requires that each eligible voter state his or her full name and address when appearing at a ward table to vote. *Id.* at 13 (citing Wis. Stat. § 6.79(2)(a)).

39. Voters must then present a photo ID. *Id.*

40. Notably, verification of name, address, and photo ID is completed by two (2) poll workers at the voting location. *See generally id.*

41. After the information is validated, the voter is required to sign the poll book used by the poll workers, and poll workers frequently have to assist the voter in finding their name. *Id.* at 14.

42. A ballot must be initialed by two (2) poll workers and is then issued to the voter, along with a voter number. *Id.* at 15.

43. After the voter completes the ballot, the voter number is returned to the poll workers when the voter feeds their ballot into the voting machine. *Id.*

44. Poll workers provide further assistance to voters who require additional help in voting, such as through the express vote machine. *See generally id.*

45. Same-day registration is also available to the public on election day. *Id.* at 22.

10

46.     If a person fills out their ballot incorrectly, the ballot is considered spoiled and returned to the poll workers for issuance of a new ballot. *Id.*

47.     In addition to poll workers and voters, election observers and the media have a right to be present during voting hours at all polling locations. *Id.* at 73.

48.     Notably, observers may examine the poll books, but the books must remain under the control of the poll workers at all times. The poll books may not be handed to the observers. *Id.* at 74.

49.     Throughout the entirety of this process, there are multiple instances in which voters and poll workers alike are closer to one another than the recommended six feet of separation for proper social distancing—and that does not even take into account the predicted lack of ability to maintain social distancing among voters in line at their polling places.

## II.     Commission Directives relative to COVID-19 and the April 7, 2020 Election

50.     In light of the COVID-19 pandemic and related public health orders, municipal clerks throughout the State of Wisconsin have expressed concerns about safe procedures for administering the April 7, 2020 election. In response, the Commission has issued several communications concerning the clerks' responsibilities relative to the administration of the election.

51.     In a memorandum prepared for the Commission's March 18, 2020 telephonic meeting, titled "Update Regarding COVID-19 Election Planning," the Commission forthrightly identified several concerns about the April 7, 2020 election as a result of the COVID-19 pandemic, such as shortages of absentee ballot envelopes, polling locations, poll workers, and even hand sanitizer and cleaning products. *See generally* Wis. Elections Comm'n, *Update Regarding*

*COVID-19 Election Planning* ("*March 18, 2020 WEC COVID-19 Planning Update*") (March 18, 2020).

52. The proffered solutions for the problems identified in the memo are impractical and insufficient—and in some cases no solutions are offered at all.

53. The memo suggests that, in response to absentee ballot envelope shortages, clerks be prepared to print their own. *Id.* A subsequent memo from the Commission indicated that it has placed an order for additional envelopes and that it "is expected to begin to receive a large portion of the envelopes on March 25, 2020." Wis. Elections Comm'n, *Absentee Envelope Order Status and Delivery Details*, 1 (March 19, 2020). However, the memo lacks specificity as to precisely when and how many envelopes municipalities can expect to receive. *Id.*

54. In response to the critical shortage of hand sanitizer and other sanitation wipes for polling places, the memo merely acknowledges that "there appears to be no hand sanitizer or sanitation wipes available through local, state or federal channels," and that while federal security funds may be used to procure sanitation supplies, "those resources do not seem to be available at this time." *March 18, 2020 WEC COVID-19 Planning Update*, 3. The Commission issued another memo about sanitizing products on March 22, 2020, with suggestions for alternative options for locations without sufficient supplies; however, the possible alternatives identified therein are inadequate and most would require municipalities to expend additional funds to attempt to employ measures that may only be partially effective. Wis. Elections Comm'n, *FAQ: Hand Sanitizer Issues and Options* ("*March 22, 2020 WEC FAQ: Hand Sanitizer*") (March 22. 2020).

55. With respect to shortages of poll workers and election inspectors, the Commission's March 18, 2020 memo suggests that clerks should create backup lists of election inspectors in case poll workers are not able or do not show up to work during the election. *March 18, 2020 WEC*

*COVID-19 Planning Update* at 4. It suggests recruiting from "high school students, college students, teachers, other municipal, county, and government employees and to private employers in the community." *Id.*

56.     The Commission also advises clerks "to develop backup plans if they personally are unable to serve in the days leading up to and on Election Day. Clerks should be in the position to deputize other members of their staff or other individuals within their local municipal government that could step in and run the election should it become necessary in an emergency. Clerks should be mindful that additional training of these individuals will be needed." *Id.*

57.     Notwithstanding the drastic orders and recommendations issued by government officials and health care providers alike, Defendants have continued to insist that municipal clerks must continue in-person voter registration, which necessarily requires that there be fewer than six feet between the registrant and the member of the clerk's staff. *See, e.g.*, Wis. Elections Comm'n, *COVID Planning – In-Person Absentee Voting Hours* (March 18, 2020); Wis. Elections Comm'n, *Update Regarding COVID-19 Election Planning* (March 18, 2020).

58.     The Commission also acknowledges that the fluid nature of the pandemic response is problematic, stating "It is also important to note that the guidance from public health officials changes daily. Because the guidance may continue to change dramatically in the coming days, WEC staff has been focusing efforts on advising clerks on the processes before them today relevant to today's guidance." *Id.*

59.     Furthermore, the Commission has admitted that given the dynamic and continually evolving nature of this crisis, "we do not know what the guidance will be as we get closer to Election Day." *Id.*

13

60.    The Commission has also stated that it "does not have the authority to change these statutory deadlines or cancel or postpone the election, and that any change may require court intervention, an act of the Legislature, or an order of the Governor." *Id.* at 1.

61.    In addition, Governor Evers and Secretary-designee Palm have publicly opposed changes to the election process, including exempting election operations from his executive orders intended to protect the public health. *See e.g.* Wis Dep't of Health Servs., *Emergency Order #8 Updated Mass Gathering Ban* (March 20, 2020).

62.    Governor Evers has also stated he does not have the authority to cancel or postpone the election. *See* Memorandum from Joseph T. Kreye, Legal Services Manager, Wisconsin Legislative Reference Bureau, to Wisconsin State Assembly Minority Leader Gordon Hintz (March 18, 2020).

## III.    City of Green Bay Election Preparations

63.    The City is finding it functionally impossible to comply with both the Wisconsin Election Commission's established procedures for administering the election *and* the directives of health officials.

64.    This is especially true given the Commission's admission that even it does not know what the guidance will be as we get closer to election day. *March 18, 2020 WEC COVID-19 Planning Update* at 1. The City cannot adequately prepare to conduct an election amidst the current crisis, or to create adequate policies and safeguards to protect both public health and the validity of the election, when the Commission itself cannot provide the necessary direction.

65.    The City is experiencing all of the issues identified by the Commission as obstacles to the election, and it is abundantly clear that the proffered solutions are both impractical and insufficient—and in some cases in direct opposition to sound public health advice.

14

66. To address absentee ballot envelope shortages, the Commission directs clerks to be prepared to print their own. *Id.* at 3. Such a suggestion, however, fails to take into account staffing shortages caused by COVID-19 as well as the fact that current clerks' staffs are already stretched too thinly while they attempt to process the overwhelming backlog created by unprecedented demand for absentee ballots. As of March 24, 2020, the City Clerk's Office was handling a backlog of over 4,000 absentee ballots with six staff members, including staff from outside of the department.

67. The City Clerk's Office does not have the resources to adequately handle all of the requests for absentee ballots plus these new directives from the Commission. Notably, the Clerk's office is attempting to address the new directives in addition to its day-to-day duties, all of which have been assigned to other departments to the extent they can be at this time.

68. In response to the critical shortage of hand sanitizer and other sanitation wipes for polling places, the Commission's March 18, 2020 memo merely acknowledges that "there appears to be no hand sanitizer or sanitation wipes available through local, state or federal channels." *Id.* Problematically, the City has also been unable to acquire any additional sanitizing products. As a result, the City has moved many of its operations to remote access to decrease the number of employees and members of the public who are required to be present in its facilities.

69. The City has determined that the alternative suggestions offered in the Commission's March 22, 2020 memo, s*ee March 22, 2020 WEC FAQ: Hand Sanitizer*, are not adequate substitutes to compensate for its lack of sanitizing products, which are necessary to ensure the cleanliness of polling places and limit potential exposure to COVID-19.

70.     Accordingly, there is no way to protect poll workers or voters if basic sanitizing wipes are unavailable for the 13-hour election day, particularly since the voting process requires people to make direct contact and operate in close proximity to each other.

71.     With respect to shortages of poll workers and election inspectors, the Commission suggests that clerks should create backup lists of election inspectors in case poll workers are not able or do not show up to work during the election. *March 18, 2020 WEC COVID-19 Planning Update* at 4. It suggests recruiting from "high school students, college students, teachers, other municipal, county, and government employees and to private employers in the community." *Id.*

72.     The City has 278 poll workers. Problematically, 72% of these poll workers are age 65 years or older, and a whopping 90% are age 60 years or older. No data is available for other COVID-19 risk factors for poll workers, such as underlying medical conditions, and no consideration has been given to the availability of child care for younger workers or potential exposure for high-risk family members.

73.     In Green Bay, only 54 of the City's 278 poll workers have agreed to work the April 7, 2020 election as of March 20, 2020. Only 11 of those 54 are Chief Inspectors.

74.     This staggering deficit cannot be addressed by creating a backup list of election inspectors as the Commission recommends. Finding poll workers has been an on-going challenge for the City for many years, leading to already creative solutions to meet poll worker needs under normal circumstances.

75.     Readying an election scheduled in a matter of two weeks with only 54 of 278 confirmed poll workers, with staff shortages, extreme backlogs of absentee ballot requests, and no additional methods or funding to carry out these directives is not only impractical, it is wholly irresponsible given that the integrity of the election will be jeopardized.

76.     In addition, this ignores the directives from the Wisconsin Department of Health Services advising that "younger people, and particularly those who are 18 to 30 years old, aren't immune to COVID-19. Anyone can contract COVID-19. So it's important for everyone, including young and healthy people, to practice social distancing." Wis. Dep't of Health Servs., *Outbreaks in Wisconsin*, https://www.dhs.wisconsin.gov/outbreaks/index.htm (last visited March 22, 2020).

77.     Furthermore, in the event of staff shortages or clerk unavailability, the recommendation by the Commission is for clerks "to be in the position to deputize other members of their staff or other individuals within their local municipal government that could step in and run the election should it become necessary in an emergency. Clerks should be mindful that additional training of these individuals will be needed." *Id.*

78.     Even assuming the City Clerk is able to identify someone who can proceed in her place, the Commission is asking the City to operate an election under unprecedented conditions, with unprecedented staffing shortages, with new and untrained staff and poll workers, and potentially headed by someone who's primary job function is not to run elections, and is therefore less familiar with the election process. This is a downright reckless request.

79.     Difficulties and delays with respect to voter registration continue to be a significant issue for this election. "The WEC strongly recommends that anyone planning to vote should request to have an absentee ballot mailed to them as soon as possible." Wis. Elections Comm. website (last visited March 24, 2020), https://elections.wi.gov. However, the Commission also notes that "[y]ou must be registered to vote to request an absentee ballot" and that "[t]he deadline to register by mail to vote has passed." *Id.* The Commission also notes that the online registration deadline has been extended as a result of Judge Conley's order, but states that it is still "working to reinstate online registration in the next few days." *Id.*

17

80. Time is of the essence. The election is only two weeks away at this point—and the registration deadline established in Judge Conley's order is less than a week away—and voters are still unable to register online. *Id.*

81. The Commission has taken no independent steps to increase voter registration opportunities. *See generally id.* Instead, the only opportunity for a person to register to vote currently is in-person, though they are working to making online registration available in compliance with the federal court order.

82. While a step in the right direction, the order of the federal court only addresses registration. It is deficient as to the in-person requirements as a whole.

83. These conflicting messages, coupled with the failure of the Governor, and Secretary-designee Palm, and/or the Commission to provide adequate alternatives for administration of the election are forcing both election workers and the electorate to choose between the fundamental right to vote, and the clear directives of medical professionals during a pandemic with significant fatalities.

84. It is irresponsible to conduct an in-person election knowing not only that older Americans are at higher risk of mortality from COVID-19 during times of community spread, but that they are also are the backbone of the election process.

85. There is no way the election can be held in-person on April 7, 2020 in Green Bay without adequate poll workers and Chief Inspectors, and without also jeopardizing both the integrity of the election and the electorate's fair and equal access to the polls.

**Claims for Relief**

**Count I**
**U.S. CONST. amend XIV, § 1; 42 U.S.C. § 1983**
**Equal Protection Violations by all Defendants**

18

86.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

87.     Under the Fourteenth Amendment, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

88.     The state of Wisconsin is subject to a ban on gatherings of ten or more people and all individuals have been ordered to preserve social distancing by maintaining six feet of space between them.

89.     However, the Governor, Secretary-designee Palm, and the Commission are requiring Clerk Teske, her staff, and poll workers to continue conducting in-person absentee balloting, and an in-person election on April 7, 2020—all of which requires those individuals to be much closer to voters than the six feet of distance all Wisconsinites have been ordered to maintain between themselves.

90.     The City has a legitimate interest in protecting the public health, safety, and welfare from the continued spread of COVID-19.

91.     The City also has a constitutional and democratic obligation to administer a free and fair election that protects the voting rights of all its constituents.

92.     The Commission's directives during this Pandemic have denied and are denying Clerk Teske and all of her staff and poll workers the equal protection of the law under the Governor's emergency declaration and the Department of Health Services's emergency orders.

93.     To conduct in-person voting as the Commission directs, Clerk Teske and all poll workers will be forced to undertake actions that are unsafe and potentially detrimental to their own health and the health of their families, friends, and the community in direct contravention of state and national orders intended to protect their health.

94.     No other group of individuals besides first responders and essential employees has been asked to engage in such unsafe activities, especially without adequate protections.

95.     A compelling interest is required to treat Clerk Teske and election workers differently under the public health orders.

96.     Neither the Governor, Secretary-designee Palm, nor the Commission have a compelling interest, important interest, or even a legitimate interest for requiring an in-person election under the circumstances, especially in light of the challenges caused by such a request.

97.     Defendants have failed and continue to fail to implement any changes to the election process to protect the public health, safety, and welfare from the continued spread of COVID-19.

98.     Defendants have failed and continue to fail to implement any changes to the election process to ensure a free and fair election that protects the voting rights of all its constituents in light of the COVID-19 Pandemic.

99.     Because of these failures, the City is not able to adequately meet its obligation to protect the public health, safety, and welfare, or administer a free and fair election that protects the voting rights of all its constituents.

100.    Compliance with the Commission's directives concerning the April 7, 2020 election places the City Clerk, Clerk staff, City employees, poll workers, and the public at an unreasonable risk of harm through exposure to COVID-19, especially given the lack of sanitation and cleaning supplies available for polling places.

101.    The Commission's directives will subject Clerk Teske, her staff, and scheduled poll workers to unequal treatment under the law, in violation of the Fourteenth Amendment to the

Constitution, based on the actual circumstances in existence at the time of filing, and not based on any hypothetical state of facts.

102.    The Commission has violated and will continue to violate the Fourteenth Amendment equal protection rights of Clerk Teske and poll workers if the April 7, 2020 election is not cancelled.

**Count II**
**Declaratory Judgment**
**28 U.S.C. §§ 2201, 2202**
**Authority to Act as to the Governor, and Secretary-Designee, and the Commission**

103.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

104.    The Governor, Secretary-designee Palm, and the Commission allege that they do not have the authority to change these statutory deadlines for voter registration or cancel or postpone the election.

105.    Notwithstanding that position, however, the Commission has also, on its own authority, has ordered that "Municipalities shall not use the Special Voting Deputy process [established by Wis. Stat. § 6.875] to serve residents in care facilities for these two elections and instead shall transmit absentee ballots to those voters by mail." Wis. Elections Comm'n, *Guidance Regarding Election Procedures and COVID-19 Public Health Emergency* ("*March 12, 2020 WEC Guidance Regarding Election Procedures*"), 1 (March 12, 2020).

106.    Wisconsin Statutes section 6.875 provides for absentee voting in certain residential care facilities and retirement homes through the use of special voting deputies, who are tasked with visiting the facilities to supervise the in-person absentee voting procedure.

107.    On March 12, 2020, Governor Evers had issued Executive Order #72, declaring a public health emergency and designating the Department of Health Services as the lead agency to

21

respond to said emergency, but the Department had not issued any specific guidance relevant to COVID-19 and long-term care facilities and assisted living facilities.[1] Wis. Dep't of Health Servs., *DPH Communicable Diseases Memos*, https://www.dhs.wisconsin.gov/dph/memos/communicable-diseases/index.htm (last visited March 22, 2020).

108.    Accordingly, at the time that the Commission ordered that municipalities "shall not" use Special Voting Deputies, *March 12, 2020 WEC Guidance Regarding Election Procedures* at 1, it was acting upon its own authority, and not pursuant to any "require[d] court intervention, an act of the Legislature, or an order of the Governor." *March 18, 2020 WEC COVID-19 Planning Update*.

109.    Although Wisconsin Statutes section 6.875 sets out specific procedures by which in-person absentee voting is to occur in residential care facilities and retirement homes, the Commission determined that it was within its authority to eliminate in-person absentee voting as an option for residents of such facilities based on information from the Department of Health Services concerning vulnerable populations and exposure to COVID-19. *March 12, 2020 WEC Guidance Regarding Election Procedures* at 1.

110.    The Commission's decision to abandon strict adherence to Wisconsin elections law is not unprecedented; earlier this year, on February 12, 2020, the Commission determined that although technically required by Wisconsin elections law, municipal clerks would not be required to send two separate primary ballots—both of which would provide an opportunity for the elector

---

[1] On March 13, 2020, the Department issued a memo containing recommendations for preventing COVID-19 in long-term care facilities and assisted living facilities. Wis. Dep't Health Servs., *Important Recommendations for Prevention of COVID-19 in Long-Term Care Facilities and Assisted Living Facilities* (March 13, 2020). However, at the time of the Commission's decision to suspend the use of Special Voting Deputies, that memo had not yet been publicly issued. Furthermore, that memo contained *recommendations* for limitations on access to such facilities, rather than explicit orders.

to cast a vote in the presidential preference primary—to registered absentee voters, as doing so would create confusion and chaos. Jason Calvi, *Wisconsin Elections Commission Votes Not to Send 2 Ballots to Absentee Voters*, Fox6Now.com (February 12, 2020 6:27 PM), https://fox6now.com/2020/02/12/wisconsin-elections-commission-votes-not-to-send-2-ballots-to-absentee-voters/.

111.    Despite having established precedent for changing election laws when situations dictate it is appropriate to do so, when asked to modify in-person absentee voting procedures for all other voters in light of COVID-19, the Commission has declined, instead reminding clerks that "directives to limit the number of people gathering in one location do not translate into the elimination of in-person absentee voting." *March 18, 2020 WEC In-Person Absentee Voting*.

112.    The Commission did not hesitate to suspend the customary operation of municipal clerks under Wisconsin Statutes section 6.875 as a result of information from the Department of Health Services that elderly populations are at increased risk of serious complications from COVID-19; however, it has balked at taking similar precautions to protect the entire voting population—which includes at-risk groups such as the elderly and those with serious underlying medical conditions.

113.    Additionally, the Commission's insistence on conducting in-person absentee voting and in-person election day voting likewise ignores the fact that densely populated areas of the state, including Brown County, are already seeing community spread of COVID-19.

114.    Similarly, the Governor and Secretary-designee Palm issued Emergency Order #12, Safer at Home Order, directing all individuals present within the State of Wisconsin to stay at home or at their place of residence, which conflicts with the prior orders in that there are no clear

23

exemptions for voting. Wis. Dep't Health Servs., *Emergency Order #12 Safer at Home Order* (March 24, 2020).

115.     Requiring in-person appearance at an in-person absentee voting location or at a polling place on election day forces electors to make a burdensome and unacceptable choice between protecting their health and the health of their friends, families, and communities, and exercising their most fundamental right as Americans: participating in democratic elections. In addition, if they do show up at the polls to vote, they do so potentially against an emergency order.

116.     Plaintiffs therefore seek a declaration from this Court that Defendants not only have the authority to suspend the application of Wisconsin's election laws given the extraordinary circumstances, but also have a duty to do so in order to simultaneously protect both the right to vote and the health of everyone living in the State of Wisconsin.


**Count III**
**Declaratory Judgment**
**28 U.S.C. §§ 2201, 2202; 42 U.S.C. § 1983; U.S. CONST. amend. XIV**
**Liability for Disenfranchisement**

117.     Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

118.     Municipalities can be sued directly under 42 U.S.C. § 1983 where the action that is alleged to be unconstitutional implements or executes a governmental policy. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690, 98 S. Ct. 2018 (1978).

119.     Rather than offering tangible solutions for addressing the unique voting-related challenges resulting from the COVID-19 pandemic, the direction from the Defendants to date has largely consisted of suggestions to municipalities to come up with their own plans, including with respect to finding new polling locations, training replacement poll workers, and coordinating with

24

the post office to ensure absentee ballots are timely received. Wis. Elections Comm'n, *March 18, 2020 WEC COVID-19 Planning Update* at 4 ("Clerks are encouraged to think creatively" to find new polling locations); *id.* (Noting that the method(s) of training new election inspectors is up to individual clerks, as "there is no minimum number of hours of training that an election inspector must complete."); *id.* at 2 ("To address concerns regarding potential delays in mail delivery by the U.S. Postal Service, WEC staff has encouraged clerks to communicate and coordinate with local post offices.").

120.    Given that Plaintiffs, rather than the Defendants, will be responsible for coming up with appropriate policies and procedures to address the difficulties in administering the April 7, 2020 election caused by the COVID-19 pandemic, Plaintiffs seek a declaration as to their responsibilities and potential liabilities for disenfranchisement under 42 U.S.C. § 1983.

121.    The City has set forth herein numerous concerns with administering the election under the current circumstances, including having to replace and train nearly all of its poll workers, and processing an unprecedented number of absentee ballots in a short period of time. There is little doubt that all of these changes will result in errors being made on election day, which in turn will expose the City to liability.

122.    The City has also set forth herein numerous concerns about potential exposure to COVID-19 at the polling places, particularly since ensuring the cleanliness and safety of its polling places will be difficult without adequate cleaning supplies. This may actually contribute to the spread of COVID-19 throughout the community.

123.    Based on these and similar difficulties posed by the Defendant's conflicting instructions to municipal clerks, the City seeks a declaratory ruling as to its potential exposure for

constitutional violations, particularly with respect to disenfranchisement, stemming from its creation of election policies and procedures based on the Defendant's requirements.

**Count IV**
**Declaratory Judgment and Injunctive Relief**
**28 U.S.C. §§ 2201, 2202; 42 U.S.C. § 1983; WIS. STAT. § 5.06**
**City Exposure to Liability Based on State Directives**

124.    Plaintiffs reallege and incorporate by reference all prior paragraphs of this Complaint as though fully set forth herein.

125.    The Defendants have made it clear that a municipality faces potential liability if it fails to abide by state election laws and Commission directives. *See, e.g.*, *March 18, 2020 WEC In-Person Absentee Voting* at 2 ("Eliminating [in-person absentee voting] processes without proper justification or authority risks a complaint being filed with the WEC, or an order being issued by the WEC, or litigation being initiated against the municipality."); *Id.* at 3 ("Wis. Stat. § 5.06 allows a resident to file a complaint with the Commission alleging that the municipality is not complying with election laws or has abused its discretion in implementing its laws."); *Id.* ("The Commission may order an election official to conform their conduct to the law . . . [and] may ask the Department of Justice to initiate court action to convert the Commission's order into an enforceable court order.").

126.    The City also risks action by voters and voters groups for failures in administering the election properly.[2]

127.    Thus, in addition to any liability under federal law for disenfranchisement or other constitutional violations potentially associated with the administration of the April 7, 2020

---

[2] Following the closure of City Hall for public business, which action was taken in order to protect City employees and the public from exposure to COVID-19, and while preparations were being made to ensure safe access to in-person registration, the City received a letter from the League of Women Voters of Wisconsin threatening legal action for any actions construed by it as denying electors the right to vote. Letter from Debra Cronmiller, Executive Director, League of Women Voters of Wisconsin, to City of Green Bay Mayor Eric Genrich (March 20, 2020).

26

election, the City also faces potential liability under state law for failure to comply with directives from the Defendants or otherwise failing to comply with election law in the absence of explicit authorization not to do so from the State, the Commission, or the courts.

128.    The difficulties of administering an election in the midst of a pandemic have put the City and all other Wisconsin municipalities in the unenviable position of having to decide between obediently following the Defendants' directives—potentially exposing more of their citizens to a dangerous disease and likely exposing themselves to liability under federal law for voting irregularities which are sure to arise—or establishing their own procedures in accordance with public health directives—thereby providing more protection to the public and diligently joining efforts to slow the spread of the pandemic through the City and the State of Wisconsin, while also exposing themselves to potential liability from the Commission and the electorate.

129.    The only way to protect the public, ensure the validity of the upcoming election, and avoid potential liability for actual or perceived disenfranchisement is to distribute mailed ballots only to all registered voters within the City and change the election date to June 2, 2020. No other steps will effectively protect the public from potential exposure to COVID-19, while simultaneously ensuring that no eligible voters are disenfranchised on account of being afraid or unable to go to the polls.

130.    Accordingly, Plaintiffs seek a declaration from this Court that they will not be subject to liability from the State and/or the Commission for failure to abide by the Commission's directives and Wisconsin election laws.

131.    Importantly, the City requests this extraordinary remedy for the April 7, 2020 election only, given the unprecedented emergency caused by COVID-19 and the unanimous

opinion of those in the health care community that the pandemic will not be over before election day, but will in fact continue to get worse up to and even after that time.

## Prayer For Relief

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A.      Against that the Commission, Secretary-designee Palm, and the Governor and for are violating the Fourteenth Amendment equal protection rights by requiring in-person absentee voting and in-person polling locations by failing to postpone the April 7, 2020 election;

B.      Declaring that in the context of the current COVID-19 crisis, the Defendants have the authority—and duty—to suspend Wisconsin's election laws to permit changes to procedures that will more sufficiently protect municipal employees, poll workers, prospective voters, and the community from further spread of COVID-19;

C.      Declaring the extent of the City's liability under 42 U.S.C. § 1983, particularly as it relates to causes of action for disenfranchisement, for instituting new policies in order to comply with the Commission's general guidance concerning issues relating to voting amidst the spread of COVID-19;

D.      Declaring that Plaintiffs will not be subject to liability from Defendants for failure to abide by the Commission's directives and/or Wisconsin election laws;

E.      Enjoining Defendants from enforcing the requirement that Plaintiffs allow in-person voter registration and/or absentee voting for the duration of the election;

F.      Ordering the Commission to permit Plaintiffs to mail election ballots to all registered voters and to cancel the election on April 7, 2020;

G.      Ordering Defendants to extend the deadline for registration electronically or by mail to May 1, 2020;

H.      Ordering Defendants to establish Tuesday, June 2, 2020 as the deadline by which municipal clerks must have counted all returned mailed ballots;

I.      Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees; and

J.      Granting such other relief as the Court deems just and proper.

Dated this 24[rd] day of March, 2020.

                              Respectfully submitted,

                              /s/ Vanessa R. Chavez
                              Vanessa R. Chavez (State Bar No. 1103015)
                              Lindsay J. Mather (State Bar No. 1086849)
                              CITY OF GREEN BAY
                              100 N. Jefferson Street, Room 200
                              Green Bay, Wisconsin 54301
                              Telephone: (920) 448-3080
                              Facsimile: (920) 448-3081
                              vanessach@greenbaywi.gov
                              lindsayma@greenbaywi.gov

## VERIFICATION

I, Kris Teske, declare as follows:

      1.      I am the City Clerk for the City of Green Bay and am a Plaintiff to this action in that capacity.

      2.      As the City Clerk, I administer all aspects of the electoral and voting process in the City of Green Bay, and am charged with ensuring the electoral process is fair, accurate, impartial, and conducted in accordance with the laws of the State of Wisconsin.

      3.      As the City Clerk, I have personal knowledge of the City of Green Bay's election preparations and the issues facing the City Clerk's office in administrating the election as set forth in the Verified Complaint for Declaratory and Injunctive Relief.

      4.      As the City Clerk, I am familiar with state election laws, and the processes for conducting an election.

      5.      As the City Clerk, I am aware of the Wisconsin Election Commission's directives relative to COVID-19 and the April 7, 2020 Election.

      6.      If called upon to testify, I am able to competently testify as to the matters stated herein.

      7.      I verify under penalty of perjury that the factual statements in this Complaint concerning the City of Green Bay's election preparations and the issues facing the City Clerk's office in administrating the election, processes for conducting an election, and WEC directives for the election are true and correct.

      Executed on March 24, 2020.

                                       /s/ Kris Teske

                                       Kris Teske, City Clerk

## VERIFICATION

I, Eric Genrich, declare as follows:

1.      I am the Mayor of the City of Green Bay, and the City's chief executive officer.  In that capacity, I take care that the city ordinances and state laws are observed and enforced, and that all city officers and employees discharge their duties.

2.      As the Mayor of Green Bay, I have personal knowledge of the current issues facing the City of Green Bay in administering an in-person election during the COVID-19 Pandemic as set forth in the Verified Complaint for Declaratory and Injunctive Relief.

3.      As the Mayor of Green Bay, I have personal knowledge of the various orders issued related to social distancing and the necessary response during the COVID-19 Pandemic as set forth in the Verified Complaint for Declaratory and Injunctive Relief.

4.      If called upon to testify, I am able to competently testify as to the matters stated herein.

5.      I verify under penalty of perjury that the factual statements in this Complaint concerning the issues facing the City of Green Bay in administering an in-person election during the COVID-19 Pandemic are true and correct.

Executed on March 24, 2020.


/s/ Eric Genrich
_____
Eric Genrich, Mayor

31