# Exhibit 9



# Wisconsin Elections Commission

212 East Washington Avenue | Third Floor | P.O. Box 7984 | Madison, WI 53707-7984
(608) 266-8005 | elections@wi.gov | elections.wi.gov

---

| | |
|---|---|
| **DATE:** | For the March 18, 2020 Commission Meeting |
| **TO:** | Members, Wisconsin Elections Commission |
| **FROM:** | Meagan Wolfe, Administrator<br>Wisconsin Elections Commission |
| **SUBJECT:** | **Update Regarding COVID-19 Election Planning** |

Commission staff continues to communicate regularly with local election officials regarding planning and procedures for upcoming elections due to the COVID-19 virus. In addition to issuing communications to clerks, staff has created a webpage dedicated to this topic which can be found here: https://elections.wi.gov/covid-19. Also, on March 16th WEC staff conducted a webinar for clerks twice during the day and once in the evening to accommodate clerks with various schedules. Over 1,000 local election officials attended one of the webinars live and the recorded webinar has also been posted on the agency website.

In addition to clarifying procedures that may need to be modified, staff has been attempting to respond to persistent concerns of clerks regarding challenges they are facing or anticipating. Significant questions are outlined below along with the feedback and observations of Commission staff.

It is also important to note that the guidance from public health officials changes daily. Because the guidance may continue to change dramatically in the coming days, WEC staff has been focusing efforts on advising clerks on the processes before them today relevant to today's guidance. For example, we are able to advise clerks on the process to conduct in-person registration and in-person absentee, which are both underway in all 1850 municipalities, in accordance with current guidance but we do not know what the guidance will be as we get closer to Election Day. We know there are some challenges that will remain, such as poll worker shortages and will adapt our training as new CDC and DHS guidance emerges.

1. **Can the deadlines for online voter registration and registration by mail be extended?**

   WEC staff has advised that the agency does not have the authority to change these statutory deadlines or cancel or postpone the election, and that any change may require court intervention, an act of the Legislature, or an order of the Governor.

   Pursuant to Wis. Stat. § 6.28(1)(a), online voter registration for the Spring Election ends on 11:59 p.m. on March 18, 2020 and registrations submitted by mail must be postmarked by March 18th. After that date voters must register in person in the municipal clerk's office or at an in-person absentee voting location. The concern regarding deadlines results from the greatly

*Wisconsin Elections Commissioners*
Dean Knudson, chair | Marge Bostelmann | Julie M. Glancey | Ann S. Jacobs | Robert Spindell | Mark L. Thomsen

*Administrator*
Meagan Wolfe

increased interest in absentee voting combined with the guidance that the public should minimize close interactions with others, especially in mass gatherings. The spread of COVID-19 shortly before the open registration deadline may cause individuals to conclude that they should not register in person without realizing that the opportunity to register online or by mail has passed.

A change to the open registration deadline would have several administrative impacts which have not been fully identified or analyzed. For instance, pursuant to Wis. Stat. § 6.32(4), within 10 days of registering, electors who register by mail or online are mailed a verification postcard to the address at which they registered. If the postcard is returned as undeliverable, the registration is changed from eligible to ineligible and the elector's name does not appear on the poll list. If the elector submitted an absentee ballot it is rejected.

The open registration deadline also allows clerks time to enter voter registration information into WisVote which is then used to create and print poll lists. Finally, any changes to online registration deadlines would require significant modification of WisVote and MyVote functionalities which involves IT development, testing and implementation. The agency avoids IT changes in the period shortly before an election because of the risk of inadvertently affecting the performance of both WisVote and the MyVote Wisconsin website.

2. **Can the deadline for the return of ballots by mail be extended?**

   WEC staff has provided similar guidance regarding the agency's lack of authority to change the deadline for the return of absentee ballots by 8:00 p.m. on Election Night. Wis. Stat. §§ 6.88(3) and 7.52(1)(a). Previously the statutes permitted absentee ballots from military and overseas electors to be counted if they were postmarked by Election Day and received by the municipal clerk by the following Friday. That provision was amended in response to the date of the Partisan Primary being changed to comply with federal UOCAVA requirements.

   The identified concern is that the spread of the COVID-19 virus and the developments related to it, including potential delays in mail delivery, may result in ballots missing the Election Night deadline. In addition, the significant increase in absentee voting may make it difficult to complete the processing and tallying of all absentee ballots on Election Night. Changing the deadline for receipt of absentee ballots would, of course, delay both unofficial results and official canvass results. Wis. Stat. § 7.53(2)(d) requires only that the municipal canvass begin by the Monday after the election in municipalities with more than one polling place. However, in practice most municipalities complete the canvass in the days after the election when they have no outstanding provisional ballots. Delays in the municipal canvass leave less time for counties to prepare for and complete the county canvass.

   To address concerns regarding potential delays in mail delivery by the U.S. Postal Service, WEC staff has encouraged clerks to communicate and coordinate with local post offices. Staff has advised that this might include clerks requesting that the local post office hold ballots that are returned in the days leading up to the election so that the clerk can pick them up rather than risk delays in transporting those ballots to the clerk's office. Commission staff will be developing guidance for clerks outlining this practice and has also been in contact with the postal service to stay informed of any potential delays or closures.

3. **How can local election officials secure the recommended sanitation resources recommended by federal and state health officials for voting processes?**

    The lack of available hand sanitizer and other sanitation products has emerged as one of the key concerns of clerks and election inspectors, a large percentage of whom are in the age range of higher vulnerability. The clerks and inspectors will be directly working with voters, and without adequate sanitation stations they would not be in compliance with the procedures recommended by federal and state health officials for large public gatherings.

    WEC staff has advised clerks to work with their local and county health authorities to determine what resources are available. Unfortunately, with some localized exceptions, there appears to be no hand sanitizer or sanitation wipes available through local, state or federal channels. Other products such as bleach and rubbing alcohol are also difficult to obtain. Staff received guidance from the U.S. Election Assistance Commission that federal security funds may be used to procure sanitation supplies; however, those resources do not seem to be available at this time.

4. **How can municipalities obtain sufficient supplies of envelopes that are needed to respond to the increase in absentee ballot requests?**

    This issue is another top priority for Commission staff right now and an internal team has been assigned to identify options to assist clerks, with the assistance and support of the Governor's Office and the Department of Administration. With the push to encourage absentee voting from various sources, clerks in many communities do not have enough absentee certificate envelopes for voters to use when returning their absentee ballot and in some cases are using envelopes intended for the fall elections. Clerks across the state currently estimate a shortage of approximately 600,000 envelopes.

    While clerks have attempted to place emergency orders of these envelopes with their usual printers to meet the demand, there is a statewide shortage of the envelope material that is normally used. Statutes do not specifically dictate the material, size or shape of the envelope that must be used by absentee voters but over the years the best practice that has developed is to use a security envelope which provides greater privacy of the ballot. Address labels are applied instead of an address window to provide secure transmission of a voter's ballot back to the clerk.

    The statutes do set forth the language of the absentee voter's certification that is to appear on one side of the envelope. Wis. Stat. § 6.87(2). This is the certificate that is checked by inspectors for completeness prior to opening the ballot on Election Day. Due to postal requirements and other considerations, the Commission has designed the certificate layout so that it fits on a stock of envelopes that are familiar to printers, clerks and voters and can be read by postal equipment for delivery. It is important to note that the current envelope style has been approved by USPS for compliance with postal standards, any deviations from the design could result in postal equipment not reading the address correctly because of the competing text on the ballot certificate.

    Commission staff is exploring all options with other state agencies and partners to identify solutions and will update the Commission regarding the status of that effort at its meeting.

5. **What can clerks do to secure new polling locations to replace public schools and other facilities which have eliminated access for the election?**

Public schools are popular polling locations because they are widespread, have large meeting areas, and are accessible for individuals with disabilities. Under the Commission's directive at its March 12 meeting, the municipal clerk or municipal election commission executive director may relocate polling places for facilities based on advice from health officials without obtaining prior approval of the local governing body or municipal election commission. Commission staff has advised clerks to implement any contingency plan they have regarding alternative polling locations in case of an emergency. When considering alternatives, clerks should attempt to find locations that are accessible to individuals with disabilities and large enough to serve their community while practicing as much social distancing as possible.

Commission staff is aware that the pool of facilities that may work is narrowing quickly. Clerks are encouraged to think creatively regarding potential facilities that may be willing serve as polling location such as fairgrounds, fire stations, private workout facilities that may have a gym or other large space, park pavilions, and other state, county or local government buildings that have meeting space. The consolidation of polling locations with other neighboring communities could also be an option depending on available space and relative convenience for the voting public. Some municipalities have consolidated polling places because they were located in facilities serving vulnerable populations and/or because of other reasons related to public health.

Commission staff posted a checklist for establishing a new polling place on the agency's website and a list of WisVote tasks related to changing a polling place was discussed during the recent clerk webinar, and was posted as well. Any changes to polling places must be communicated to voters in any means available, including postings, website changes, social media, direct mailings and traditional media stories or publicity.

6. **What steps can be implemented to address an expected decrease in available election inspectors, both because of direct impacts of the COVID-19 virus and because of concerns about its potential risks.**

   With over 50% of poll workers in the state over the age of 60, Commission staff has encouraged clerks to put together backup lists of election inspectors in case poll workers notify clerks they will not be able to work, or do not show up on Election Day due to illness or other health concerns. Clerks should implement any contingency plans they have regarding a shortage of poll workers and consult any existing supplemental lists they may have. Staff has also suggested that clerks reach out to high school students, college students, teachers, other municipal, county, and government employees and to private employers in their community. Commission staff is also encouraging members of the public to come together and serve as poll workers if able to do so safely.

   Clerks are also advised to develop backup plans if they personally are unable to serve in the days leading up to and on Election Day. Clerks should be in the position to deputize other members of their staff or other individuals within their local municipal government that could step in and run the election should it become necessary in an emergency. Clerks should be mindful that additional training of these individuals will be needed. While there is no minimum number of hours of training that an election inspector must complete, inspectors need to know the basics as to what they are expected to do, and maybe more importantly, who to contact if they have questions at the polls. The Commission has many training resources on its website to assist

clerks in training their poll workers, as well as the Election Day Manual which is a good resource for all inspectors.

WEC is also partnering with state leadership to encourage Wisconsinites who are not in a vulnerable demographic to serve as poll workers. This includes encouraging state and government employees, high school and college students, teachers, and local private industry to do their part to serve democracy. Many clerks are also in a vulnerable age demographic and may need to deputize someone to serve in an in-person capacity on their behalf.

7. **Can the current "hospitalized elector" procedures contained in statute apply to and be used by individuals quarantined at home during this public health crisis?**

Wisconsin Statute § 6.86(3) states that any registered or unregistered elector that is hospitalized may obtain an absentee ballot from their clerk via agent up to 7 days prior to Election Day and up to 5 p.m. on Election Day itself. The agent acts on behalf of the voter in providing the appropriate forms and proof to the municipal clerk (registration form, proof of residence, absentee ballot request, photo ID) as requested by the hospitalized elector. The agent appears at the clerk's office and the clerk, upon confirming the elector is eligible and all paperwork has been completed properly, issues the ballot to agent who in turn provides the ballot to the hospitalized elector. The hospitalized elector votes the absentee ballot, using the appropriate certificate return envelope and the agent returns the ballot to the clerk's office personally.

Statutes do not specifically define "hospitalized elector" but given the unique process involved outside the normal protections of the election at a polling location, the Commission staff has historically construed the hospitalized elector definition narrowly when asked who meets the definition. Generally, the advice has been that the elector must be hospitalized or in a facility directly as a result of their hospitalization, for example a rehabilitation facility that an elector is sent to after discharge from the hospital. This extension of a hospital stay in a medical facility has constituted the only uses of the unique voting procedure outside of a hospital setting.

Some clerks have asked whether the hospitalized elector criteria should be expanded given the pandemic situation where many individuals could be restricted to their homes and advised not to vote at a polling location. In order to adopt such an approach, the Commission would need to direct staff that individuals that are unable or unwilling to leave their homes because of the risks associated with COVID-19 transmission could be considered a hospitalized elector for purposes of Wis. Stat. § 6.87(2) and direct staff to advise clerks of this available method of absentee voting if requested. Absent such a directive and change in interpretation of the current statutory language, Commission staff would continue to advise that the hospitalized elector provisions only apply to individuals that are in a hospital or doctor-ordered care facility after discharge from a hospital.

Expanding the hospitalized procedure to individuals that are unable or unwilling to leave their homes because of the pandemic may introduce other concerns because it requires the agent to facilitate some personal interaction with the affected voter. The agent generally has two sets of interactions with the voter and the clerk during this process – when the voter completes all absentee ballot request and voter registration paperwork, and the agent obtains the ballot from the clerk, and also when the agent provides the ballot to the voter who then completes it for the agent to return to the clerk. The window of time for this process under the statute is limited, and

it is difficult to predict the number of individuals that would be willing to act as agents given the current advice on social distancing and interactions with vulnerable populations.

8. **How does the Department of Health Services' March 17, 2020 Emergency Order affect the availability of libraries and other public facilities for voting purposes?**

On March 17, 2020, the Department of Health Services issued Emergency Order #5, which generally bans all public and private mass gatherings of 10 people or more to mitigate the spread of COVID-19. The order lists many types of mass gatherings, including bars and restaurants (subject to some exemptions), schools, auditoriums, theaters, health and fitness facilities, pools and houses of worship, among others.

The order does, however, exempt some facilities which could impact the conduct of elections. The order specifically exempts "state and local government facilities, including government services centers, unless prohibited elsewhere in this order or another order." Additionally, the order specifically exempts "FACILITIES FOR VOTING" and indicates schools and libraries as examples of exempt facilities. Therefore, while schools, libraries and other governmental buildings may be closed for normal operations, they may continue to serve as voting locations.

According to public comments of the Governor over the last several days, election officials and voters should continue to plan that the Spring Election and Presidential Primary will occur on April 7, 2020. Commission staff believes its own work and guidance to clerks has reflected that approach and encourages clerks to seek solutions to the challenges posed by the circumstances.